[Cite as *State v. Pence*, 2014-Ohio-5072.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2013-CA-109 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-TRC-6034 |
| v. | : | |
| | : | |
| PAUL PENCE | : | (Criminal Appeal from |
| | : | Clark County Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of November, 2014.

. . . . . . . . . . .

MARC ROSS, Atty. Reg. #0070446, Clark County Municipal Prosecutor's Office, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

WILFRED L. POTTER, Atty. Reg. #0029121, 234 North Limestone Street, Springfield, Ohio 45503
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Paul Pence appeals from his conviction and sentence, following a no-contest plea, for Operating a Vehicle Under the Influence of Alcohol or Drugs in violation of R.C. 4511.19(A)(1)(a).   Pence contends that the trial court erred by overruling his motion to suppress evidence obtained from his traffic stop.   According to Pence, the deputy sheriff who initiated the traffic stop had neither probable cause for the stop nor a reasonable and articulable suspicion that Pence had violated a traffic law.   Furthermore, Pence contends that the deputy sheriff lacked probable cause to administer field sobriety tests during the traffic stop.   Pence also contends that the trial court's decision is against the manifest weight of the evidence.

{¶ 2}    We conclude that the trial court did not err in overruling Pence's motion to suppress.   We also conclude that Pence has failed to demonstrate that the trial court's decision is against the manifest weight of the evidence.   Accordingly, the judgment of the trial court is Affirmed.

### I. Pence Drives Across the Center Line, Resulting in a Traffic Stop

{¶ 3}    At about 1:00 A.M. on May 29, 2013, Clark County Sheriff's Deputy Brian Beller observed Pence driving a truck on Dayton Road, just outside Springfield.   Beller noticed that Pence was driving on the center line, so Beller turned around and began following the truck.   While following Pence, Beller observed the truck drive over the center line by more than a tire's width for two seconds.   Beller initiated a traffic stop.

{¶ 4}    When he approached Pence's driver side window, Beller observed that Pence had

glassy, bloodshot eyes and a flush face. Beller also noticed a moderate odor of alcohol. When Beller requested to see Pence's driver's license and registration information, Beller noticed that Pence had difficulty concentrating on this task while listening to Beller. Pence admitted that he had consumed two beers earlier that night. Beller asked Pence to step out of the truck in order to perform some field sobriety tests. When Pence exited the vehicle, he was unsteady and left the vehicle running. Pence performed poorly on the field sobriety tests. Beller arrested Pence for suspicion of Operating a Vehicle Under the Influence of Alcohol or Drugs .

## II. Course of the Proceedings

{¶ 5}    Pence was charged with a Marked Lanes Violation, R.C. 4511.33(A), and with Operating a Vehicle Under the Influence of Alcohol or Drugs in violation of R.C. 4511.19(A)(1)(a). Pence filed a motion to suppress evidence from the traffic stop. The trial court overruled this motion. Pursuant to a plea agreement, Pence then pled no contest to the OVI charge, and the Marked Lanes Violation was dismissed. The trial court found Pence guilty of the OVI and sentenced him to 35 days in jail, 30 of which were suspended. The trial court also fined Pence and suspended his driver's license for two years. Pence appeals from this judgment.

## III. The Trial Court Properly Overruled Pence's Motion to Suppress

{¶ 6}    Pence's first three assignments of error involve the trial court's decision to overrule his motion to suppress evidence. These three assignments state:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DECIDING

THAT STATE HAD A REASONABLE AND ARTICULABLE SUSPICION THAT THE APPELLANT VIOLATED A TRAFFIC LAW.

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DECIDING THAT THE STATE HAD PROBABLE CAUSE FOR THE STOP.

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING THE APPELLANT'S MOTION TO SUPPRESS SINCE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FIND [SIC] A REASONABLE AND ARTICULABLE SUSPICION OR PROBABLE CAUSE TO ADMINISTER THE FIELD SOBRIETY TESTS.

**{¶ 7}** In deciding a motion to suppress, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

**{¶ 8}** The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). "The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable

and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." (Citations omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. If an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. *Id.* at ¶ 8.

{¶ 9} R.C. 4511.33(A)(1) provides that a driver must remain within the lane markings "as nearly as is practicable" and that a driver shall not move from a lane "until the driver has first ascertained that such movement can be made with safety." As the Supreme Court of Ohio explained in *Mays*, "[t]he phrase 'as nearly as is practicable' does not give the driver the option to remain within the lane markings; rather, the phrase requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying." *Id.* at ¶ 18.

{¶ 10} Deputy Beller testified that he witnessed Pence drive left of the center line for two seconds. As the *Mays* court explained "[a] traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *Id.* at syllabus. Consequently, we conclude that the trial court properly found that Deputy Beller had a reasonable and articulable suspicion that Pence had committed a traffic offense. *Mays* at ¶ 7, 18.

{¶ 11} Pence cites *State v. Spillers,* 2d Dist Darke No. 1504, 2000 WL 299550 (March 24, 2000), contending that it stands for the proposition that crossing a white line three times and driving on a yellow line constitute only de minimus traffic violations. But as we pointed out in *State v. Simmons*, 2d Dist. Montgomery No. 23991, 2011-Ohio-5561, ¶ 16, fn. 1, we don't know what the traffic violations were that the trial court found to have been de minimus in *Spillers*,

because the defendant in that case testified that he had not committed any irregularities while driving, and the trial court did not specify the traffic violations that it found him to have committed, only stating that they were de minimus.

{¶ 12}   Pence also contends that Deputy Beller did not have sufficient suspicion or probable cause to prolong the traffic stop in order to conduct field sobriety tests and then arrest Pence on suspicion of a DUI.  The trial court found that a number of facts supported Deputy Beller's decision, including: Pence's glassy, bloodshot eyes, the presence of a moderate odor of alcohol, Pence's admission that he had earlier consumed two beers, Pence's flush face, Pence's inability to concentrate when the deputy asked for his driver's license and registration, and Pence's failure to turn off his vehicle before exiting it.  The trial court's findings are supported by the testimony of Deputy Beller.

{¶ 13}   Deputy Beller testified regarding Pence's poor performance on the field sobriety tests.  Pence's performance, along with the other observations made by Deputy Beller, supported the decision to arrest Pence under suspicion of Operating a Vehicle Under the Influence. Therefore, we conclude that the trial court did not err in overruling Pence's motion to suppress.

{¶ 14}   Pence's first three assignments of error are overruled.

### IV.   Pence Has Failed to Demonstrate How The Trial Court's
### Judgment Is Against the Manifest Weight of the Evidence

{¶ 15}   On page 2 of his brief, Pence identified the following Fourth Assignment of Error:

THE DECISION OF THE TRIAL COURT WAS AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16}   At no point in his brief, however, does Pence discuss this assignment of error or make an argument regarding this assignment of error.   Furthermore, Pence does not cite to any portion of the record to support this assignment of error.   Therefore, the Fourth Assignment of Error is overruled.

## V. Conclusion

{¶ 17}   All of Pence's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

FROELICH, P.J., concurring:

{¶ 18}   The Appellant obviously had the right to be represented by counsel at his plea and sentencing.   *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).   No person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial or plea or knowingly and intelligently waived the right to counsel.   *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

{¶ 19}   In fact, the Appellant had been represented throughout the proceedings by retained counsel.   At the hearing, the following dialogue occurred:

THE COURT: This is the State of Ohio v. Paul Pence.   This is Case No.

13 TRC 6034 before the Court for status conference today. The matter is scheduled for trial by jury tomorrow. The record will reflect that Attorney Ross is here on behalf of the State of Ohio. Mr. Pence is here as well. Mr. Pence, you got the Court's Entry that was filed, the ruling on the Motion to Suppress?

MR. PENCE: Correct

THE COURT: All right, and so you are aware that, you were made aware because the Entry contained information that Mr. Potter's license is suspended?

MR. PENCE: Yes, the last paragraph. I did not receive that letter 'til last week ago yesterday (sic). I had contacted Mr. Potter's offer – office. He had said that it would be reinstated by today, and it isn't.

THE COURT: OK, so you're choosing to proceed today without counsel?

MR. PENCE: I, yes, Your Honor.

THE COURT: OK, was there something more you wanted to say?

MR. PENCE: Well, I had contact - I just didn't get a phone call from Mr. Potter's office 'til yesterday morning about 10:30, and I had no timing to have anyone to counsel me today.

THE COURT: Well, Mr. Pence, the Court had a conversation with you in late September, I think.

MR. PENCE: Yes, yes, Your Honor, you – I met with you in your chambers and you had made that comment that I probably should seek new counsel, but at that time, I thought he – he advised me that he was A-OK and he would be able to continue. I deeply feel that he's capable but he's, I - why his

registration or license was not renewed, I do not know and I, didn't, wasn't aware of that 'til I got the letter. And then he said that was gonna be taken care of, and here it is today and it's not taken care of.

THE COURT: So, Mr. Ross, have you spoken with Mr. Pence today?

MR. ROSS: Yes, I have.

THE COURT: And did you make an offer?

MR. ROSS: Yes, we had talked about, he indicated his desire in lieu of going to trial, to entering a no contest plea to the OVI. The State would dismiss the marked lanes violation. Mr. Pence also indicated that he, it was his intention to possibly appeal the Court's ruling on the Motion to Suppress decision and he was intending to ask the Court for a stay of the, whatever sentence pending his pursuit of an appeal.

{¶ 20} Later, after the court personally addressed the Appellant about his trial rights, the following took place:

THE COURT: You have the right to a lawyer, Mr. Pence. Do you understand that?

MR. PENCE: Yes.

THE COURT: And you're choosing to proceed today without counsel?

MR. PENCE: Today, yes.

THE COURT: All right. Do you understand this charge has mandatory sanctions? There will be a mandatory fine of $375.00, a mandatory suspension of your operator's license for six months, mandatory confinement for 72 hours.

That can be in the county jail or a driver's intervention program. All of those sanctions are required.

MR. PENCE: Yes.

THE COURT: The maximum possible sanctions here are a fine of $1,075.00, a three-year driver's license suspension and 180 days in jail. Do you understand that?

MR. PENCE: The maximum?

THE COURT: That's the maximum, yes.

MR. PENCE: Yes.

THE COURT: Do you have any questions about the penalties you face?

MR. PENCE: No, Your Honor.

THE COURT: Any questions about the rights you're waiving?

MR. PENCE: No.

THE COURT: Any questions about what it means to plead no contest?

MR. PENCE: No.

THE COURT: And are you sure this is how you want to proceed?

MR. PENCE: Yes Your Honor.

{¶ 21}   After the plea was accepted, and the court orally pronounced sentence, which included a 35-day jail sentence with 30 days suspended (which was stayed pending appeal), and a two-year license suspension, the court gave the Appellant an entry to review and sign. Mr. Pence responded:

MR. PENCE: Your Honor, can I make a phone call?

THE COURT: Make a phone call for what?

MR. PENCE: For advice of counsel or make a phone -

THE COURT: I don't understand your question.

MR. PENCE: On the charges. I mean, before I sign this.

THE COURT: No, you need to sign it. The Court has sentenced you, Mr. Pence.

MR. PENCE: Okay.

THE COURT: I don't understand why you'd need to make a phone call at this time. You indicated you were waiving your right to counsel, did you not?

MR. PENCE: Well, I do not have counsel here.

THE COURT: I understand that. We've already talked about that and you told the Court you wanted to proceed without counsel. (pause)

MR. PENCE: I have any driving privileges whatsoever?

{¶ 22} A waiver of counsel for a petty offense must comply with Crim.R. 44. The waiver of counsel must affirmatively appear on the record, and a knowing and voluntary waiver may not be presumed from a silent record. *Garfield Heights v. Brewer*, 17 Ohio App.3d 216, 479 N.E.2d 309 (8th Dist.1984). This court must indulge every reasonable presumption against the waiver of fundamental constitutional rights, including the right to be represented by counsel. *State v. Dyer*, 117 Ohio App.3d 92, 95, 689 N.E.2d 1034 (2d Dist.1996).

{¶ 23} Although the Appellant tersely responded that he would proceed without counsel, there is little indication in the record to establish he fully understood and intelligently relinquished his right to counsel. To be valid, a defendant's waiver of counsel must be made

with an understanding of the nature of the charge against him, the statutory offense, the range of allowable punishments, possible defenses available to him, mitigating circumstances, and all other facts necessary for a broad understanding of the case against him. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 277, ¶ 40, citing *State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976). An inquiry which touches only upon some of the factors will not adequately establish an effective waiver of counsel. *State v. McQueen*, 124 Ohio App.3d 444, 706 N.E.2d 423 (10th Dist.1997).

{¶ 24} Moreover, the Appellant's statement that he had "no timing to have anyone counsel me today" and his request to make a phone call "for advice of counsel" raise issues about any knowing, voluntary and intelligent waiver.

{¶ 25} These are the concerns that occasioned our September 25 Entry soliciting possible additional briefing, *see, e.g., C. Miller Chevrolet, Inc. v. Willoughby Hills*, 38 Ohio St.2d 298, 301, 313 N.E.2d 400 (1974), fn. 3, to which there was no response.

{¶ 26} It may well be that counsel and the Appellant decided to forego any additional argument (and I do not imply any specific result if the issues were raised). We rarely expand our review beyond the Assignments of Error. Cf. *State v. DeWitt,* 2d Dist. Montgomery No. 23735, 2010-Ohio-6476, ¶ 56-58 (Froelich, J., concurring in part and dissenting). And based on the adversary system, I concur.

. . . . . . . . . .

Copies mailed to:

Marc Ross
Wilfred L. Potter
Hon. Denise L. Moody