[Cite as *State v. Comer*, 2014-Ohio-5755.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 13AP-955 |
| v. | : | (M.C. No. 2013 TRC 129356) |
| Amy Comer, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 30, 2014

*Richard C. Pfeiffer*, *Jr.*, **City Attorney**, *Lara N. Baker*, **and** *Melanie R. Tobias*, **for appellee.**

*Tyack, Blackmore, Liston & Nigh, Co., LPA, Jonathan T. Tyack*, **and** *Ryan L. Thomas*, **for appellant.**

APPEAL from the Franklin County Municipal Court.

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Amy Comer, from a judgment of conviction and sentence entered by the Franklin County Municipal Court following the court's denial of a motion to suppress and appellant's entry of a no contest plea to the offenses of operating a motor vehicle while under the influence of alcohol and driving outside of marked lanes.

{¶ 2} On April 13, 2013, at approximately 1:00 a.m., two Ohio State Highway Patrol Troopers stopped a vehicle driven by appellant. The troopers cited appellant for operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19, and a marked lanes violation, in violation of R.C. 4511.33. On July 23, 2013, appellant filed a

motion to suppress, asserting in part that the troopers lacked reasonable suspicion to make a traffic stop. On August 9, 2013, the state filed a memorandum contra the motion to suppress.

{¶ 3} On October 9, 2013, the trial court conducted a hearing on the motion. During the hearing, Trooper Juana Rueda ("Trooper Rueda") gave the following testimony. At approximately 1:00 a.m., on the morning of April 13, 2013, Trooper Rueda, while on duty with another trooper, observed a car driven by appellant; the troopers began following appellant's vehicle, which was traveling southbound on Sawmill Road. Trooper Rueda observed the car "weaving and crossing the lines," and appellant's vehicle "almost hit the concrete" divider. (Oct. 9, 2013 Tr. 7.) The troopers activated the cruiser's lights and stopped appellant's vehicle.

{¶ 4} During Trooper Rueda's testimony, the state introduced a video recording taken from a camera inside the patrol cruiser on the date of the incident. On direct examination, the video was played and Trooper Rueda was asked to describe what she was observing; the trooper testified that she observed three lane violations, including one instance in which appellant "almost hit the curb." (Oct. 9, 2013 Tr. 10.)

{¶ 5} By entry filed October 9, 2013, the trial court denied the motion to suppress. Appellant subsequently entered a plea of no contest to the charged offenses. By judgment entry filed November 5, 2013, the trial court sentenced appellant to 180 days in jail, with 177 days suspended; the court also imposed a one-year period of community control and a fine of $375.

{¶ 6} On appeal, appellant sets forth the following assignment of error for this court's review:

> THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRAFFIC STOP OF DEFENDANT-APPELLANT'S VEHICLE VIOLATED HER RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14, OF THE OHIO CONSTITUTION.

{¶ 7} Under her single assignment of error, appellant challenges the trial court's denial of her motion to suppress. Appellant argues that the findings by the court are

against the manifest weight of the evidence, asserting that the video recording from the cruiser "clearly shows" that her vehicle did not violate any traffic lane laws.

{¶ 8} Under Ohio law, "[a]ppellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Cochran,* 12th Dist. No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. In considering a motion to suppress, "the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility." *Id.* Accordingly, "a reviewing court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence." *Id.* However, an appellate court "independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id.*

{¶ 9} The Supreme Court of Ohio has held that a traffic stop is constitutionally valid "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances." *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 8.

{¶ 10} In the instant case, the troopers cited appellant for a violation of R.C. 4511.33, which states in relevant part:

> (A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
>
> (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

{¶ 11} The above statutory provision "requires a driver to drive a vehicle entirely within a single lane of traffic." *Mays* at ¶ 16. Thus, "[w]hen an officer observes a vehicle drifting back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33." *Id.*

{¶ 12} As noted, appellant argues that her conviction is against the manifest weight of the evidence. Appellant maintains that the video recording taken from the camera

inside the highway patrol vehicle fails to show any lane violations, and she thus contends the video undermines the credibility of the testifying trooper.

{¶ 13} In response, the state argues that the video is unclear and inconclusive regarding the marked lanes violation, and that it does not impugn the trooper's credibility. Specifically, the state argues that the actual location of the driver's side tires on appellant's vehicle in relation to the left lane line cannot be seen on the video at all times due to (1) the glare of the streetlights at night, and (2) the distance appellant's vehicle was traveling in front of the patrol vehicle. The state further argues that the testimony of the trooper, standing alone, constituted sufficient proof that appellant committed a marked lanes violation.

{¶ 14} This court has independently reviewed the video recording from the cruiser's camera, identified in the record as joint exhibit No. 1. Based upon our review, we agree with the state's characterization that the video footage is unclear and inconclusive, one way or the other, as to the issue of marked lanes violations.

{¶ 15} We note that several Ohio appellate courts have addressed similar factual circumstances. In *State v. Hoegler,* 11th Dist. No. 2013-P-0075, 2014-Ohio-1158, the appellant was charged with a violation of R.C. 4511.33, and subsequently filed a motion to suppress. During the suppression hearing, the arresting trooper testified that he observed the appellant commit two lane violations in which the appellant's vehicle crossed the center line of the highway. In addition to the testimony of the trooper, the trial court viewed a "grainy DVD from the trooper's dash-cam." *Id.* at ¶ 4. The trial court denied the appellant's motion to suppress, finding credible the trooper's testimony that he observed the appellant's vehicle travel left of center.

{¶ 16} On appeal, the appellant argued that the DVD from the patrol cruiser failed to support the trooper's testimony concerning the left of center violations. The appellate court in *Hoegler* agreed with that characterization, but further observed that "the DVD likewise fails to establish that the left of center violations did *not* occur." (Emphasis sic.) *Id.* at ¶ 17. The court found, based on its own review, that "the DVD quality is simply too poor to be conclusive," and thus "[w]e are * * * left with only the testimony of [the trooper] to resolve this matter." *Id.* at ¶ 18. In affirming the trial court's decision, the court in *Hoegler* rejected the appellant's argument that the trooper's testimony was not

supported by competent and credible evidence, holding that the trial court did not err in relying on such testimony in denying the motion to suppress. The court further noted that the appellant failed to show any basis for the trial court to question the trooper's testimony.

{¶ 17} In *State v. Sitko,* 11th Dist. No. 2011-P-0042, 2012-Ohio-2705, ¶ 2, the appellant was charged with operating a vehicle under the influence of alcohol, as well as a "lanes-of-travel violation" under R.C. 4511.25. The appellant filed a motion to suppress, and the matter proceeded to a hearing on the motion. During the suppression hearing, an officer testified that he observed the appellant's vehicle cross over the center line. The trial court, finding that the officer had observed the appellant commit a lane violation by traveling left of center, therefore determined that the officer had grounds to stop his vehicle.

{¶ 18} On appeal, the appellant argued that the officer's dash cam video, which was introduced into evidence by the state, failed to reveal a lanes-of-travel violation. The court in *Sitko* noted, however, that the appellant's argument "ignores Officer Firtik's testimony that he saw appellant commit two lane violations before he stopped him." *Id.* at ¶ 19. The court also found that the video corroborated "at least part of" the officer's testimony. *Id.* The court observed that the video was "grainy," and that the officer "said the dash cam was unable to clearly record this violation because he was 85 to 100 yards away from appellant at the time." *Id.* at ¶ 21. The court further determined that "[t]o the extent the video is unclear," the trial court was in "the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses." *Id.* at ¶ 20.

{¶ 19} In *State v. Gonzaliz,* 5th Dist. No. 2013CA00077, 2013-Ohio-5309, the appellant was charged with a violation of R.C. 4511.33(A)(1). At a subsequent suppression hearing, a trooper testified as to observing the appellant's vehicle drift over the lane dividing line and then back into the appellant's own lane, and the trial court denied the appellant's motion to suppress. On appeal, the appellant challenged the trooper's credibility, arguing the cruiser's video recording of the stop did not show the violation.

{¶ 20} In *Gonzaliz* at ¶ 16, the court rejected the appellant's argument, holding in part:

> At the time the violation would appear on the video, appellant's vehicle was well in front of the cruiser, and due to

glare of streetlights on the roadway it is virtually impossible to see the white lane markings in the area where appellant's vehicle was travelling. The trooper testified that he observed appellant cross the line by about a quarter width of the vehicle. The judge is in the best position to determine the credibility of witnesses. * * * The trooper's testimony represents competent, credible evidence that appellant was not travelling within the lanes marked for travel. As the video was unclear and inconclusive, the trial court did not err in finding the testimony of the trooper to be credible.

{¶ 21} As previously noted, this court's review of the video recording admitted as evidence during the suppression hearing is not conclusive regarding the issue of marked lanes violations; the position of the vehicle to the marked lines is obscured due to nighttime glare from streetlights and, as in *Gonzaliz,* appellant's vehicle is "well in front of the cruiser" at "the time the violation would appear on the video." *Id.* at ¶ 16. Similar to the above cases, we are therefore "left with only" the testimony of the trooper "to resolve this matter." *Hoegler* at ¶ 18.

{¶ 22} Here, the trooper testified at the suppression hearing that she observed appellant "weaving and crossing the lines," and almost hitting a concrete divider. (Oct. 9, 2013 Tr. 7.) According to the officer, she observed a total of three lane violations. The trial court, in denying the motion to suppress, found "no evidence submitted to call into question the truthfulness of the trooper, * * * [d]espite the extremely poor quality of the video equipment provided * * * there were traffic violations observed." (Oct. 9, 2013 Tr. 17.)

{¶ 23} In arguing that the trooper lacked a reasonable suspicion to stop her vehicle, appellant cites in support cases in which courts have held that driving on a center line does not constitute a lawful basis for a stop. *See, e.g.*, *State v. Richardson,* 5th Dist. No. 00-CA-A-01-003 (July 14, 2000) (no violation of R.C. 4511.33 where officer testified that appellee's vehicle traveled over top of center line, but did not cross over center line; therefore, officer lacked articulable and reasonable suspicion to make investigatory stop); *State v. Grigoryan,* 8th Dist. No. 93030, 2010-Ohio-2883 (officer's testimony that defendant's vehicle was drifting, and that defendant was driving on yellow line, did not give rise to articulable suspicion to make investigatory stop). However, as noted by the state, the trooper in the present case provided testimony as to appellant "crossing" the

marked lines. We therefore agree with the state that the authority relied upon by appellant is distinguishable from the facts of this case.

{¶ 24} We further note that Ohio courts have found a traffic stop to be constitutionally valid in instances in which an officer observed as few as one or two marked lane violations. *See, e.g., State v. Tarlton,* 4th Dist. No. 02CA688, 2002-Ohio-5795 (upholding stop where officer observed vehicle's left tires cross roadway's yellow center line by approximately one tire length); *Mays* (traffic stop constitutionally valid where trooper witnessed defendant drift over lane markings twice without any further evidence of erratic driving); *State v. Pence,* 2d Dist. No. 2013-CA-109, 2014-Ohio-5072 (deputy had reasonable and articulable suspicion that defendant committed a traffic offense based on deputy's testimony that he observed defendant drive left of the center line for two seconds in violation of R.C. 4511.33).

{¶ 25} In the present case, the trial court was in the best position to evaluate the credibility of the trooper's testimony, and the unrebutted testimony of Trooper Rueda constituted competent, credible evidence to support the trial court's finding that the trooper observed violations. Further, as the video was "unclear and inconclusive," the trial court did not err in finding such testimony to be credible. *Gonzaliz* at ¶ 16. *See also State v. Waldo,* 12th Dist. No. CA2008-02-015, 2008-Ohio-4167, ¶ 9 ("even if the videotape from the police cruiser fails to show the actual location of Waldo's tires vis-à-vis the center and right lines of the lane, [the officer's] testimony, alone, provided sufficient proof that Waldo committed a marked lane violation by going left of center"). Accordingly, because the trial court did not err in finding the testimony of the trooper to be credible, we further find that the court did not err in denying the motion to suppress.

{¶ 26} Based upon the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Municipal Court is hereby affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____